Filing # 38530173 E-Filed 03/02/2016 04:32:22 PM

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.:

THE GEO GROUP, INC.

      Plaintiff,

vs.

HCC LIFE INSURANCE COMPANY

      Defendant.

_____/

## COMPLAINT

Plaintiff, THE GEO GROUP, INC., ("GEO"), by and through its undersigned counsel sues the Defendant, HCC LIFE INSURANCE COMPANY ("HCC"), and states:

### SUMMARY OF CLAIM

GEO offers health insurance to its over 14,400 employees through a self-insured Group Health Plan. GEO purchased a Stop Loss policy with HCC to pay benefits on medical claims under GEO's Group Health Plan when those claims exceed certain specified large deductibles. GEO retained a Third Party Administrator (TPA), Blue Cross Blue Shield of Florida (Florida Blue) with the expertise to review and administer all medical claims.

Terrin Lee, a GEO employee's 18-year old son born with Downs Syndrome, developed pneumonia like symptoms, was hospitalized in Huntsville, Texas, and was transferred to Texas Children's Hospital where he was treated as a pediatric adolescent patient. He required extensive medical treatment over a two-month period, but tragically passed away.

Geo v. HCC
Page No. 2

At the advice and direction of its TPA, Florida Blue, GEO paid the medical

expenses for Terrin.  HCC was timely advised of GEO's payments and entitlement to

reimbursement in accordance with terms of the GEO's HCC Stop Loss Policy.

However, HCC has breached its insurance contract with GEO and refused to reimburse

GEO despite confirmation from Florida Blue and its medical experts that the expenses

at issue were properly paid pursuant to GEO's Group Health Plan.

GEO relied upon and followed the directions of its TPA in paying the claims.  The

TPA has affirmed that if Florida Blue was the Stop Loss insurer, as would every other

responsible stop loss carrier, GEO would have been reimbursed.

## ALLEGATIONS

1. This is an action for damages in excess of $15,000.00 exclusive of attorneys' fees,

   costs and interest as a result of HCC's breach of contract in failing to reimburse a

   covered claim under the insurance policy HCC issued to GEO.

2. GEO is a Florida corporation with its principal place of business in Palm Beach

   County, Florida.

3. HCC is an Indiana corporation that is authorized to and does issue insurance

   policies in the State of Florida including the policy at issue.  HCC is regulated for its

   Florida policies by the Florida Department of Insurance.

## INSURANCE POLICY BACKGROUND

4. GEO is a publicly traded company on the New York Stock Exchange under the

   symbol GEO.

5. GEO is a world leader in providing correctional, detention, and community reentry

   services.  GEO employs over 14,400 individuals.

Geo v. HCC
Page No. 3

6. GEO offers health insurance to its employees and their families through GEO's self-insured Welfare Employee Benefit Plan ("Group Health Plan"). The Group Health Plan is administered by its designated third-party administrator, Blue Cross/Blue Shield of Florida ("Florida Blue"). Florida Blue's duties and responsibilities include administrative claims payment services, claims processing, program administration, evaluation of payments requested and paid, maintenance of records and reports and interaction with and management of out of state health services.

7. HCC issued a Stop Loss Insurance policy to GEO. The policy provides coverage from November 1, 2014 through October 31, 2015. The policy number is HCL31368. ("the Policy"). A copy of the Policy is attached as **Exhibit "A"**. The policy incorporates by reference the Plan Document that governs the medical benefits payable under the Group Health Plan, a copy of which is attached as **Exhibit "B"**.

8. A Stop Loss Insurance policy provides coverage for business entities such as GEO with a self-funded health insurance plan to protect the company against catastrophic and unpredictable losses. As with most self-funded plans, GEO pays the vast majority of most claims in that the claims do not exceed the per Covered Person deductible.

9. The monthly premium paid by GEO to HCC was approximately $140,000.00 per month.

Geo v. HCC
Page No. 4

## BACKGROUND OF THE TERRIN LEE ILLNESS

10. Keith Lee, a GEO employee in Huntsville, Texas, had chosen to participate in the medical benefits available to his family under GEO's Group Health Plan. The Group Health Plan, therefore, covered Mr. Lee's son, Terrin Keith Lee ("Terrin").

11. Just prior to the medical care and treatment at issue, Terrin had turned 18 years old. He was a vibrant, happy youth who was born with Downs Syndrome.

12. On October 26, 2014, Terrin was admitted to Huntsville Memorial Hospital in Huntsville, Texas for pneumonia like symptoms.

13. On October 27, 2014, Terrin was intubated for respiratory failure.

14. After being diagnosed with a serious illness, on doctor's advice and direction, Terrin was transferred to Texas Children's Hospital ("TCH"). The decision to transfer Terrin was medically necessary and made by physicians at both facilities.

15. Terrin had previous surgeries at TCH. TCH is a regional congenital heart disease center which is specifically equipped to treat individuals like Terrin with significant and complex medical needs. In that Terrin had just turned 18 and was born with Downs Syndrome, he was treated as a pediatric adolescent patient.

16. Terrin received care at TCH from October 27, 2014 through January 21, 2015.

17. Terrin's condition improved during his hospitalization as a result of being placed on Extracorporeal Membrane Oxygenation ("ECMO") support, which is a cardiopulmonary bypass technique that provides long-term breathing and heart support. ECMO is not a treatment for any disease, but a support system for the lungs providing an environment for the lungs and heart to recover.

Geo v. HCC
Page No. 5

18. In addition to ECMO, Terrin received Inhaled Nitrous Oxide therapy to improve oxygenation, and Antithrombin III to address anticoagulation in the blood.

19. With ECMO therapy, Terrin was documented as being awake, sitting up in bed, communicating and eating; all signs of improvement as noted by his medical providers.

20. In that Terrin was being actively evaluated by his medical providers at TCH for lung transplant candidacy, ECMO support and the medications were essential for his survival.

21. Tragically, despite the fact that Terrin's condition was improving, he passed away on January 21, 2015 as a result of an unforeseen and unrelated intracranial hemorrhage.

## CLAIM TO HCC FOR MEDICAL EXPENSES

22. During his treatment, Terrin incurred charges of at least $6,814,341.41 from TCH for his medical care. These charges include charges for treatment rendered prior to November 1, 2014 for which GEO does not seek reimbursement from HCC.

23. The Plan Document, which the Policy incorporates by reference, vests Florida Blue, as the Third Party Administrator, with "the authority, responsibility and discretion to construe the provisions of the Plan as necessary, to reach factually supported conclusions . . . ." This provision means, Florida Blue, "as the Plan's Claims Administrator, has been given the discretion and authority to determine on the Plan's behalf whether a treatment or supply is a Covered Health Service and how the Allowed Amount will be determined and otherwise covered under the Plan."

Geo v. HCC
Page No. 6

24. Consistent with this authority, responsibility and discretion, Florida Blue determined that the services that Terrin received at issue were covered under the Plan Document. Florida Blue also determined that at least $4,318,894 in charges for the period covered by HCC were Allowed Amounts. Florida Blue also recommended and directed that GEO pay those Allowed Amounts, which GEO has paid and HCC has received proof of same as required by the HCC policy.

25. After the charges at issue began to exceed the specific deductibles in the Policy, GEO began to submit those charges to HCC for reimbursement. Initially, HCC paid $1,880,491.02 of the amounts submitted.

26. Later, after the cost of Terrin's care continued to mount, HCC hired a consultant (Avandé) which initially claimed $5,205,174.12 of the charges for "the use of Nitric Oxide and ECMO were not medically appropriate for this patient." Accordingly, HCC refused to reimburse any charges that it has not already reimbursed as not "Medically Necessary" within the meaning of the Policy. HCC advised GEO of its position by letter dated July 14, 2015. A copy of the Avandé report was also provided to GEO. HCC's letter also contended that the charges at issue should not be reimbursed as they were not Reasonable and Customary within the meaning of the Policy.

27. A copy of HCC's letter and Avandé report were also provided to Florida Blue. In response, Florida Blue retained Dr. Michael Hines, a Professor of Pediatric Cardiovascular Surgery and Professor of Cardiothoracic Surgery, to review Terrin's care and treatment and opine as to whether the use of Nitric Oxide and ECMO was Medically Necessary and appropriate under the circumstances. Dr. Hines

Geo v. HCC
Page No. 7

responded to specific questions posed by Florida Blue and confirmed that the use of Nitric Oxide and ECMO in Terrin's case was indeed Medically Necessary and appropriate.

28. Once again, HCC returned to its hired consultant Avandé, to revisit Florida Blue's determination. At that time, Avandé, in a second report authored by a different person dated September 9, 2015, conceded that ECMO support for fourteen (14) days was medically necessary, but continued to challenge the use of ECMO support after fourteen (14) days and the use of Nitrous Oxide. For the first time, Avandé challenged the use of Antithrombin III as not medically necessary or as being experimental/investigational. As with its first report, the second Avandé report did not challenge the reasonableness of any cost incurred either. The second Avandé report, a copy of which was provided to Florida Blue by GEO, also contained specific critiques of Dr. Hines' answers to questions posed to him.

29. Thereafter, Dr. Hines prepared a detailed and exhaustive response to this report. Dr. Hines, as distinct from the Avandé reviewers, has a specific professional expertise in ECMO and related medical care. Dr. Hines used his considerable expertise to address each area raised by Avandé in detail, including Antithrombin III, based on his extensive educational and clinical experience. He also provided specific professional references. By letter dated October 30, 2015, GEO forwarded Dr. Hines' report to HCC (see **Exhibit C** attached) together with a detailed explanation as to why the charges at issues were Covered Expenses for purposes of the policy. GEO continued to rely on Florida Blue's extensive expertise and familiarity with all aspects of care, treatment and coverage in paying the claims.

Geo v. HCC
Page No. 8

30. Despite the clearly demonstrated responsibility to pay under Policy, HCC refused to change its position.  Instead, HCC (through its attorney) sent GEO yet another letter stating additional grounds under the Plan Document for its refusal to reimburse GEO for Terrin's claim.  As before, these additional grounds did not provide a proper basis for denial.  GEO's attorney sent its final letter to HCC on February 22, 2016 along with an additional report from Dr. Hines dated January 27, 2016 to specifically address HCC's ever changing positions. (see **Exhibit D** attached).

31. As of the date of this lawsuit, after accounting for all deductibles and all prior payments of the $4,318,894 which Florida Blue has determined should be paid and which has been paid by GEO for the period covered by HCC, $2,088,402.98 due to GEO remains unpaid by HCC.

32. All conditions precedent to filing this action have been met or were waived.

## COUNT I - BREACH OF CONTRACT

33. GEO adopts and realleges paragraphs 1 – 32.

34. HCC issued the Stop Loss Policy to GEO.

35. Endorsement 5 to the policy provides that "if" the parties agree any dispute can be settled by arbitration.  GEO does not agree to arbitrate this dispute by arbitration.

36. The Policy provides coverage for Covered Expenses paid in excess of certain specified deductibles.

37. The Policy defines Covered Expenses as:

Plan Benefits incurred by a Covered Person:

1. For which benefits are Paid by the Policyholder under the Employee Benefit Plan, and
2. Which are not in excess of the Reasonable and Customary Charge for those services, and

Geo v. HCC
Page No. 9

3. Which are Medically Necessary for the treatment of an illness or injury or for any preventative care covered by the Employee Benefit Plan, and

4. Which are reimbursable under this policy subject to its terms, deductible(s), limitations and exclusions.

See **Exhibit "A"**.

38. On behalf of GEO, Florida Blue used its extensive expertise and its contractual responsibility to GEO to determine that the medical expenses submitted to HCC in relation to Terrin's claim were Covered Expenses under the Plan Document (Employee Benefit Plan), that the charges were not in excess of the Reasonable and Customary Charge for those services and that the charges were covered under HCC's Policy. Despite HCC's denial, Florida Blue, as GEO's TPA, has continued to affirm its determination that HCC has an obligation to pay these expenses under the Plan Document.

39. The medical expenses submitted to HCC in relation to Terrin's claim are Covered Expenses under the Policy.

40. HCC was provided with timely notice of the Covered Expenses related to Terrin's claim.

41. HCC breached the Policy by refusing to pay GEO's claim for Covered Expenses.

42. As a result of HCC's breach of its Policy, GEO has been obligated to retain the services of the undersigned attorney, and the law firm of Brown & Lewis, LLP, and is obligated to pay the costs and reasonable attorneys' fees for services rendered to bring this action.   GEO is entitled to a recovery of fees and costs, Fla. Stat. § 627.428.

43. As a direct and proximate cause of the breach by HCC of its insurance contract, GEO demands the following relief:

Geo v. HCC
Page No. 10

   a.  Award GEO damages for unpaid Covered Expenses resulting from Terrin's claim

       in the amount of $2,088,402.98;

   b.  Prejudgment interest;

   c.  Award GEO costs including expert fees for bringing this action;

   d.  Award GEO attorney's fees pursuant to Fla. Stat. § 627.428;

   e.  Such other relief as the court deems appropriate.

44. GEO filed a Civil Remedies Notice pursuant to Fla. Stat. § 624.155 on February 22, 2016.  GEO reserves the right, post-verdict, to amend this action to include a new claim/action based on the Civil Remedies Notices.

GEO further demands Trial by Jury.

Dated: this **2nd** of <u>March,</u> 2016.

**CRITTON, LUTTIER & COLEMAN LLP**
303 Banyan Blvd
Suite 400
West Palm Beach, FL 33401
Telephone: 561-842-2820
Facsimile: 561-253-0164

By: _____
ROBERT D. CRITTON, JR.
Florida Bar No. 224162
J. CHRIS BRISTOW
Florida Bar No. 068304
*Attorneys for the Plaintiff*
Primary email:   rcrit@lawclc.com
Secondary email:  jcbristow@lawclc.com
                      czaguirre@lawclc.com
